IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

FREDERICK SHAWNEE CARTER,

      Plaintiff,

v.                                     Case No. 2:23-cv-00812

FAYETTE COUNTY SHERTIFF'S DEPRTMENT, *et al.*,

      Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the court are the following motions: a Motion to Dismiss filed by Deputy Powell [ECF No. 9]; a Motion to Dismiss filed by the Fayette County Sheriff's Department [ECF No. 11]; a Motion to Dismiss filed by Deputy Cogar [ECF No. 15], and Plaintiff's Motion to Deny Motions to Dismiss [ECF No. 25]. By Standing Order, this matter is referred to the Honorable Dwane L. Tinsley, United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). For reasons appearing to the Court, it is hereby **ORDERED** that the referral of these pending motions to the Magistrate Judge is **WITHDRAWN,** and the undersigned will proceed to rule thereon.

## I.    Plaintiff's allegations.

Plaintiff appears to be a state criminal pre-trial detainee, who is presently incarcerated at the Southern Regional Jail ("SRJ"), in Beaver, West Virginia. On

December 26, 2023, Plaintiff filed a complaint under 42 U.S.C. § 1983 against the Fayette County Sheriff's Department ("FCSD"), two of its deputies, who are identified as Deputy Powell and Deputy Cogar, and "other deputies to be identified in discovery." [ECF No. 2 at 2]. Plaintiff's convoluted complaint appears to allege that, on three separate occasions, Defendants Powell, Cogar, and other unidentified deputies, used excessive force against him during his arrests. However, Plaintiff's present complaint is short on details, including the dates of two of these alleged incidents.

Specifically, the complaint first alleges that, on an unspecified date, Plaintiff, who was admittedly driving a GMC Denali without a valid inspection sticker or proof of insurance, was pulled over by Deputy Cogar on or near Kimberly Hollow Road in Fayette County, West Virginia. [ECF No. 2 at 4-5]. Plaintiff further alleges that Cogar falsely accused him of "driving erratically and all over the road." [*Id.* at 5]. Plaintiff acknowledges that he did not stop his car until he reached his residence about a mile away. [*Id.* at 5-6].

Plaintiff further alleges that, when he exited his vehicle, Cogar handcuffed him and then "violently" swept his legs out from under him, causing him to fall and injure his right hip. [*Id.* at 6]. Cogar then placed Plaintiff in his cruiser and drove him to the police station. [*Id.*] Plaintiff contends that during this trip, Cogar did not place him in a seatbelt and, himself, drove erratically, throwing Plaintiff around the vehicle, and causing him further injury. [*Id.* at 6-7]. Plaintiff alleges that Cogar engaged in this conduct "solely to punish and inflict pain upon [him] seriously." [*Id.*

at 7]. Plaintiff also asserts that Cogar threatened him and made "derogatory comments and racial slurs." [*Id.*]

Upon removing him from the vehicle at the FCSD station, Plaintiff alleges that Cogar "planted [his] face into the concrete ground." [ECF No. 2 at 7]. He further contends that Cogar brought him to the police station as part of a "plan to meet up with" Deputy Powell to beat him, as she had previously threatened. [*Id.* at 5, 7]. Plaintiff apparently has a history of prior arrests and confrontations with Powell, who had also "intentionally [made] slanderous and discriminatory and derogatory remarks towards this Plaintiff on several occasions." [*Id.* at 4-5].[1] In fact, Plaintiff appears to allege that he had filed a complaint against Powell prior to her employment with the FCSD when she was an officer with the City of Montgomery Police Department, in Montgomery, West Virginia, and learned that she had other complaints filed against her, demonstrating a "pattern" of conduct. [*Id.* at 15-16]. Plaintiff suggests that he was "flabbergasted" about her getting promoted and "being a sheriff's deputy." [*Id.* at 17].

Plaintiff further alleges that, when he was taken inside, Powell and other deputies were present, but two deputies, who were not "on the same page" left the station. [*Id.* at 7]. Plaintiff further contends that Powell then directed six deputies to put Plaintiff in a small room. [*Id.*] Cogar allegedly removed Plaintiff's handcuffs and began taunting him to hit Powell, who was standing in front of him, but Plaintiff said he was "too afraid that they would kill [him]." [*Id.* at 7-8]. Plaintiff further

---

[1] At the same time, Plaintiff's complaint suggests that he had been "gone from the area for 25 years." [ECF No. 2 at 17]. Thus, it is unclear when these alleged prior incidents occurred.

claims that these officers began beating him, even after he fell to the floor in the fetal position. [*Id.* at 8]. Plaintiff describes one of the other officers as a man with a "big red beard" who "continuously beat [him] in the back" where he had "two surgically repaired scars." [*Id.*] Plaintiff further alleges that, after this "savage beating," he could not walk for six days. [*Id.* at 8-10]. Plaintiff contends that Cogar radioed someone about taking Plaintiff to the hospital but was, instead, told to take him to the regional jail. Upon arrival at the SRJ, a nurse allegedly refused to admit Plaintiff and told Cogar to take him to the hospital. [*Id.* at 8-9]. Plaintiff alleges that this resulted in a "big skirmish" at the jail, but Plaintiff remained there under the care of its medical staff. [*Id.* at 9].

The complaint next contends that "about a month or 2" after the above arrest (the complaint does not specify the date), Plaintiff (who apparently got out of jail), wrecked his Denali somewhere in the same vicinity of Fayette County. Plaintiff allegedly told "unbiased and neutral" witnesses that he wanted to "leave the scene" prior to the arrival of FCSD law enforcement because "they hate me for some reason." [*Id.*] He further alleges that he was extracted through the "back glass" of the vehicle, which was tangled in power lines, and was placed in an ambulance. [*Id.* at 10]. He contends that Defendant Powell arrived and gave him "every last possible" test to try to arrest him for "something illegal or DUI," but when her attempts failed, Powell attacked him on the gurney in the ambulance. [*Id.* at 10-11]. Plaintiff asserts that he "threw [Powell] off of him" and that a "500 lb. EMT" "pulled him off of Defendant Powell," who called in for assistance from other deputies. [*Id.* at 11].

4

According to Plaintiff, Deputy Cogar and Deputy "Big Red Beard" responded, pulled their weapons on Plaintiff, and threatened to kill him, while making him walk "about 6 miles" off Deepwater Mountain. [*Id.* at 11-12]. Although Plaintiff alleges that Powell let him have his keys so he could "gain entry to [his] residence," he was not able to recover his "journal/black book" containing his telephone numbers. [*Id.* at 12]. The complaint states that Plaintiff "told the civilians on the scene what to expect and what kind of treatment these young, rogue Sheriff's Department Deputies Defendants were going to subject [him] to once they would arrive on scene" and "they did not at all disappoint." [*Id.* at 12-13].[2]

The complaint further specifically alleges that, on November 4, 2023, Plaintiff was "false[ly] accuse[d] and falsely and wrongfully imprison[ed]" for arson, allegedly stemming from his burning of clothing and other items which he claims were left by "people illegally living in [his] residence" while he was in the hospital and whom had allegedly "vandalized and sold any and everything of value in [his] home." [*Id.* at 19-20]. Plaintiff asserts that no dwelling or other structure was involved in the fire and, thus, he was not guilty of arson. [*Id.*] He further suggests that his bond was excessive. [*Id.* at 20].

Although the complaint lacks sufficient details, Plaintiff further alleges that a prior warrant for his arrest contained "wrong" information, showing "a propensity to false[ly] accuse and falsely and wrongfully imprison" him. [*Id.*] Based upon all of this, Plaintiff alleges that the FCSD has "wrongfully and biasedly and prejudicially

---

[2] It is unclear whether Plaintiff went directly home after this incident or what else transpired immediately thereafter.

treated [him]." [*Id.* at 19]. Plaintiff also summarily asserts that he was "assaulted again by [an] unknown deputy on Nov. 4, 2023." [*Id.* at 21]. Plaintiff seeks monetary damages "due to the past and current actions of these Defendants and these wrongful acts of the deputies and the Fayette County Sheriff's Dept." which "seem to get more egregious[] and outrageous each time." [*Id.* at 22]. Plaintiff's form complaint summarily asserts that the Defendants committed a "constitutional rights violation" under § 1983, "wrongful imprisonment," and "slander/tort." [*Id.* at 3].

## II.    Pending motions and related briefing.

The FCSD and Defendants Powell and Cogar filed separate motions to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting that Plaintiff's complaint fails to state any plausible claim for relief against them. [ECF Nos. 9, 11, and 15]. Each Defendant argues that Plaintiff has not provided fair notice of the claims against them as required by Rule 8(a)(2) of the Federal Rules of Civil Procedure. [ECF No. 10 at 4-5; ECF No. 12 at 4-5; ECF No. 16 at 4-5]. The FCSD also specifically argues that it cannot be held vicariously liable for the actions of its employees under § 1983. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). [ECF No. 12 at 4].

On March 19, 2024, Plaintiff filed a collective response to the Defendants' motions to dismiss. [ECF No. 20]. His response largely repeats his allegations concerning each of the incidents discussed in his complaint. Nonetheless, Plaintiff's response still failed to specify when his arrest by Defendant Cogar and beating by

Cogar, Powell, and others at the police station allegedly occurred.[3]  Likewise, Plaintiff's response fails to specify the subsequent date on which he wrecked his vehicle and Defendants Powell, Cogar, and "Big Red Beard" allegedly again used force against him.  [*Id.* at 2].  His response further suggests, for the first time, that a female deputy named Larissa Roles (who was not named in the initial complaint) was responsible for his wrongful arrest and imprisonment on the arson charge on November 4, 2023.  [*Id.* at 3-4, 6-7].  Plaintiff summarily asserts that this wrongful imprisonment was "plotted and coerced by Defendant Fayette County Sheriff's Department and those named and identified deputies and those soon to be identified." [*Id.* at 4].

Plaintiff's response brief also alleges new facts concerning another "wrongful arrest" by Defendant Powell and others on September 30, 2023 (his birthday).  [*Id.* at 7].  Plaintiff further claims Powell "slandered" him by using "derogatory and racist remarks[]" and arrested him "in front of all of his guest[s] and family" on a "fabricated and totally inaccurate" warrant.  [*Id.*]  This appears to be the basis of the conclusory allegations in Plaintiff's initial complaint concerning a warrant that contained "wrong" information leading to his "false imprisonment."  [ECF No. 2 at 20-21; ECF No. 20 at 7].

On March 26, 2024, Defendants filed a Joint Reply brief asserting that Plaintiff's response failed to correct the asserted deficiencies in his complaint which,

---

[3]  Plaintiff's response suggests that "this date to be determined upon interrogatories and discovery will also identify other rogue and vigilante Deputies and Defendants who also partook" in this conduct. [ECF No. 20 at 2].

they contend, "does not meet even the most liberal standards" for pleadings. [ECF No. 22 at 1-2]. Thus, Defendants again contend that their motions should be granted, and Plaintiff's complaint should be dismissed, with prejudice. [*Id.* at 2].

On May 20, 2024, Plaintiff filed a Motion to Deny Motions to Dismiss (which is essentially an unauthorized sur-reply) reiterating his contentions that these Defendants "unlawfully arrested, assaulted, prosecuted, and harassed him[.]" [ECF No. 25 at 1]. His sur-reply further attempts to allege a new claim against the Sheriff of Fayette County (who was not specifically named in the initial complaint and is not specifically identified in his response). His sur-reply contends, for the first time, that the "Sheriff [is liable] as the supervisory officer responsible for the conduct of the defendants and for his failure to take corrective action with respect to police personnel whose vicious propensities were notorious, to assure proper training and supervision of the personnel, or to implement meaningful procedures to discourage lawless official conduct[.]" [*Id.* at 1]. Similarly, Plaintiff's sur-reply also seeks to allege a new claim against the "County of Fayette" as "the employer of the police personnel, which is sued as a person under 42 U.S.C. § 1983." [*Id.*] Plaintiff again emphasizes that the alleged misconduct of "these Defendants" caused him "humiliation, emotional distress, pain and suffering, restrictions on his liberty including the necessity of posting bail, [which was] excessive[,]" and he again asserts that the incident that occurred on November 4, 2023 did not support a charge of first degree arson. [*Id.*]

### III.    Standard of Review

A motion filed under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint or pleading. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, 'the-defendant-unlawfully-harmed-me' accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). When "faced with a Rule 12(b)(6) motion to dismiss . . . courts must . . . accept all factual allegations in the complaint as true." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). To achieve facial plausibility, the plaintiff must plead facts allowing the court to draw the reasonable inference that the defendant is liable, moving the claim beyond the realm of mere possibility. *Id.* Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555.

### IV.    Discussion

Based on the scant facts provided in the run-on complaint, Plaintiff's allegations against the Defendants are liberally construed to be alleging violations of the Fourth and Fourteenth Amendments grounded in his false arrests and

imprisonment and uses of excessive force on three separate occasions. However, other than his allegations concerning his arrest for first degree arson on November 4, 2023, Plaintiff's complaint fails to allege enough facts to fairly place each defendant on notice of when these other incidents occurred. He indicates that the second encounter with Powell, Cogar, and another deputy whom he has identified only as "Big Red Beard," occurred about a month or two after his traffic stop by Cogar and the alleged beating by Cogar, Powell, and other unidentified deputies, including "Big Red Beard" at the police station. Yet, from the facts as presently alleged, neither the Court, nor the Defendants can discern when the first incident allegedly took place. Consequently, the Court finds that a more definite statement or amendment of the facts supporting Plaintiff's claims is required.

Furthermore, Plaintiff's briefs suggest an attempt to amend his allegations to include new supervisory liability claims against the Fayette County Sheriff, personally, and against Fayette County.[4] Moreover, as aptly noted by the

---

[4] Although not specifically argued by Defendants, a sheriff's department is not a proper party because it does not meet the definition of a "person" under § 1983. 42 U.S.C. § 1983. *See Booker v. Fayette Cty. Sheriff's Dep't*, No. 2:14-cv-11523, 2015 WL 2344849, at *3 (S.D.W. Va. May 14, 2015); s*ee also Morton v. Welcome*, No. 3:12-cv-126, 2013 U.S. Dist. LEXIS 106516, at *4 (N.D.W. Va. May 23, 2013) ("The Berkeley County Sheriff's Department and the Martinsburg City Police Department are not proper defendants because these entities are not persons subject to suit under 42 U.S.C. § 1983."); *Buhro v. Dent*, No. 5:13–cv–81, 2014 WL 460937, at *3 (N.D.W. Va. Feb. 5, 2014) (noting that sheriff's department and police department in *Morton* "were not proper party defendants as they are integral parts of the city/county government and are merely the vehicle through which the city/county government fulfills its policing functions"). As further noted in *Terlosky v. Matthews*, No. 5:11-cv-6, 2011 WL 1302238, at *2 (N.D.W. Va. Mar. 31, 2011), a sheriff's department "has no status independent of the Sheriff" and is not a governing body of the county. Rather, the proper party in these situations is the sheriff or the county commission. *Id.* at *2 ("As the Fourth Circuit has observed, 'in the realm of county law enforcement,' it is not the office of the sheriff but 'the sheriff [who] is the duly delegated policy maker for the county.' *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 874 (4th Cir. 1989). Therefore, a claim against the office of the sheriff is 'effectively a claim against the governing body of the . . . County.'"). However, even if this court were to liberally construe Plaintiff's allegations against the County and its Sheriff's Department as being brought against the Fayette County Commission, the initial complaint is too threadbare and conclusory to state a proper claim against that entity.

Defendants' motions, the Sheriff and the County cannot be held vicariously liable for the actions of their subordinates. *Franklin v. City of Charlotte*, 64 F.4th 519, 530 (4th Cir. 2023); *Est. of Jones v. City of Martinsburg*, 961 F.3d 661, 672 (4th Cir. 2020). The Supreme Court, however, has recognized that "[m]unicipalities are 'persons' within the meaning of § 1983" when the municipality itself inflicts the constitutional injury by adopting a "policy" or "custom" which is the "moving force" behind the constitutional injury. *Monell, supra*, 436 U.S. at 694-95; *see also Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) ("[N]ot every deprivation of a constitutional rights will lead to municipal liability.  Only in cases where the municipality causes the deprivation 'through an official policy or custom' will liability attach.") (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999), *abrogated on other grounds by Wilson v. Gaddy*, 559 U.S. 34 (2010)).

The Fourth Circuit has identified four ways in which a municipality may adopt a policy or custom establishing a basis for *Monell* liability:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens;" or (4) through a practice so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle*, 326 F.3d at 471 (alteration in original).  A plaintiff must not only prove the policy or custom's existence on one of these bases but must also demonstrate that it caused his or her constitutional injury. *Franklin*, 64 F.4th at 536.  As presently pled, Plaintiff's allegations do not satisfy these requirements.

Additionally, to state a claim of supervisory liability against the Sheriff, personally, the Fourth Circuit has firmly established a weighty burden of proof requiring personal action by the supervisor in the deprivation of the plaintiff's rights. *Iqbal*, 556 U.S. at 677; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994); *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984). "'Liability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights,' or where a subordinate acts pursuant to a policy or custom for which the supervisor is responsible." *Id.* (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)).

Thus, there are three elements necessary to establish supervisory liability:

(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Id.* at 799. In order to establish the first element, the plaintiff must show "(1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff." *Id.* "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Id.*

12

Turning to the second element, the plaintiff "may establish deliberate indifference by demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses.'" *Id.* (citations omitted).  The Fourth Circuit has held:

> The plaintiff assumes a heavy burden of proof in establishing deliberate indifference because: [o]rdinarily, [the plaintiff] cannot satisfy his burden of proof by pointing to a single incident or isolated incidents, for a supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence within the area of his responsibilities.  Nor can he reasonably be expected to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct.  A supervisor's continued inaction in the face of documented widespread abuses, however, provides an independent basis for finding he either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates.

*Id.* (citations omitted).  The third element for supervisory liability is established "when the plaintiff demonstrates an 'affirmative causal link' between the supervisor's inaction and the harm suffered by the plaintiff." *Id.* (citations omitted).

To the extent that Plaintiff is attempting to assert claims against the Fayette County Sheriff and/or Fayette County, his confusing initial complaint fails to clearly allege those claims or to provide sufficient facts to support them.  Thus, Plaintiff would need to amend his complaint to properly assert such claims.  Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that leave to amend should be freely given where justice so requires, and the Fourth Circuit has recognized that "the better practice" is to allow a pro se plaintiff leave to amend unless it "appears to a certainty that plaintiff cannot state a claim." *Ostrzenski v. Seigel*, 177 F.3d 245, 252-53 (4th Cir. 1999).

I **FIND** that the interests of justice require that Plaintiff be given an opportunity to amend his complaint to cure the deficiencies acknowledged herein and to state, in one operative document, all claims that he now seeks to pursue. Accordingly, it is hereby **ORDERED** that Plaintiff is granted leave to file an amended complaint by **September 13, 2024**. It is further **ORDERED** that the amended complaint must identify, to the best of Plaintiff's information and belief, each individual or entity he seeks to name as a defendant. Plaintiff must also state what constitutional, statutory, or common law rights he believes each defendant has violated and support each claim with specific factual allegations about each defendant's actions or omissions, and allege, with some degree of particularity, <u>when and how</u> each named defendant was involved in the alleged deprivation of his rights.

If Plaintiff is unable to specifically identify a defendant, he should name that defendant as "John Doe" (and if there is more than one John Doe defendant, then he should name them as "John Doe # 1," John Doe # 2," etc.) and attempt to describe their position or job title. Furthermore, Plaintiff should, to the best of his knowledge and belief, specifically describe the actions or omissions of the John Doe defendants, just as he should for any specifically identified defendant.

Plaintiff is hereby **NOTIFIED** that it will be insufficient for him to simply refer to his prior complaint, or additional documentation, or to incorporate the same by reference in the amended complaint. The amended complaint will supersede the original complaint, and there must be **one integrated document** that will provide the defendants with notice of the claims and allegations against them. Plaintiff is further

**NOTIFIED** that, pursuant to Rule 10 of the Federal Rules of Civil Procedure, he should include a caption of the case with the names of all of the parties, and he should state his claims in numbered paragraphs, "each limited as far as practicable to a single set of circumstances," and each type of claim, if more than one, should be set out in a separate count, to promote clarity. Fed. R. Civ. P. 10.

Considering that Plaintiff has been granted leave to amend his complaint, it is further **ORDERED** that Defendants' Motions to Dismiss [ECF Nos. 9, 11, and 15] and Plaintiff's Motion to Deny Motions to Dismiss [ECF No. 25] are **DENIED WITHOUT PREJUDICE**. This matter remains referred to United States Magistrate Judge Dwane L. Tinsley for additional proceedings.

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER:    August 14, 2024

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE